# STRUCTURED SETTLEMENT ANNUITY
# SALE AND ASSIGNMENT AGREEMENT

THIS STRUCTURED SETTLEMENT ANNUITY SALE AND ASSIGNMENT AGREEMENT dated as of the 19th day of March, 2010 is entered into

**BETWEEN:**

**ANNAKA ROCHELLE DULANEY**
An individual residing in the State of Alabama
(hereinafter called the "Seller")

OF THE FIRST PART

-and-

**WOODBRIDGE STRUCTURED FUNDING, LLC**
A limited liability company pursuant to the laws
of Delaware (hereinafter called "Buyer")

OF THE SECOND PART

WITNESSES THAT in consideration of the premises, the mutual covenants and agreements herein contained and other good and valuable consideration (the receipt and sufficiency of which each party hereto irrevocably acknowledges), the parties agree as follows:

## SECTION ONE

## PURCHASE AND SALE OF ANNUITY

1.1   Agreement to Sell and Buy. Subject to the terms and conditions set forth in this Structured Settlement Annuity Sale and Assignment Agreement and schedules hereto, which form an integral part of this agreement (collectively referred to as the "Agreement"), Seller hereby agrees to sell, transfer, deliver and irrevocably assign to Buyer and Buyer's successors and assigns at Closing (as hereinafter defined), and Buyer hereby agrees to buy from Seller, all of Seller's right, title and interest in (a) certain payments arising out of an agreement or order to settle a personal injury damage claim (such agreement or order, the "Settlement Agreement"), to which Seller is a party and the payment obligations under which have been assigned to the Annuity Owner, as defined in the Terms Rider attached as Schedule "A" hereto, which said payments are set out and more particularly defined in the Terms Rider (such payments are hereinafter collectively referred to as the "Assigned Payments"), (b) the Annuity (as defined in said Terms Rider) and (c) all Related Rights (as defined in Section 1.9 of this Agreement). Notwithstanding any references to the Annuity in this Agreement or any other provision of this Agreement to the contrary, the parties agree that the "Assigned Payments" and Related Rights hereunder shall include without limitation Seller's rights under the Settlement Agreement as against the Annuity Owner with respect to the payments identified on Schedule "A" and shall not be limited to Seller's rights under the Annuity.

Initials

1 of 11

EXHIBIT A

1.2     Price and Terms of Payment. The purchase price (hereinafter called the "Purchase Price") for the Assigned Payments is as set out in the Terms Rider. Buyer covenants and agrees to pay the Purchase Price on the Closing Date (as hereinafter defined in Section 1.3 hereof) to the Seller in immediately available funds by wire transfer, bank draft or certified check, at Buyer's discretion. Should any payment from the Assigned Payments be received by the Seller prior to the Closing Date then Seller shall have the right to keep said payment(s) and the Purchase Price shall be reduced by the amount of any such payment(s).

>   (a)    Holdbacks. (a) If the Periodic Payments are monthly payments, at Closing, Buyer shall have the right, but not the obligation, to hold back from the Purchase Price an amount equal to the next three (3) Periodic Payments due Seller. Once a payment has been received by Buyer directly from Annuity Owner or Annuity Issuer, Purchaser will release the balance of the held amounts to Seller, without interest, less an amount equal to the sum of all Periodic Payments received by Seller after the Closing Date."

1.3     Closing.      The closing of the within transaction shall occur on the fifth (5th) business day following the date on which the last of the conditions precedent set forth in Section 2.1 has been satisfied (hereinafter referred to as the "Closing Date). The closing shall take place at the Closing Place as stipulated in the Terms Rider or at such other location agreed upon in writing by Buyer and Seller. At any time prior to the Closing Date Buyer shall have the sole and absolute discretion to cancel this Agreement without further obligation to Seller if (i.) Seller defaults in respect of his obligations hereunder; or (ii) otherwise in accordance with the Agreement. Further, should any of the conditions precedent remain unsatisfied by the Conditions Date as set out in the Terms Rider then Buyer shall have the sole and absolute right to cancel this Agreement at any time thereafter without further obligation of Buyer to Seller.

1.4     Delivery of Assigned Payments.

>   (a)    Seller shall deliver or cause to be delivered and assign, and Buyer shall accept, the Assigned Payments on the Closing Date.

>   (b)    Seller covenants with Buyer that at the time of closing on the Closing Date title to the Assigned Payments will be good and marketable, free and clear of all claims, liens, mortgages or encumbrances of any kind or character.

1.5     Access to Documents.      From and after the date of this Agreement and up to the Closing Date, Buyer shall, on reasonable notice to Seller from time to time have access to all documents and information related to the Annuity and the Assigned Payments as well as all related or underlying agreements ("Documents") for purposes of reviewing same. When requested by Buyer, Seller shall deliver copies of the Documents to Buyer for Buyer's review and files, which Documents shall include but not be limited to (i.) a copy of the underlying settlement and release agreement/order under which Seller is entitled to receive the Assigned Payments; (ii) the Annuity contract(s); (iii) a qualified assignment and release if applicable; (iv) a structured settlement questionnaire (to be provided by Buyer and executed by Seller); (v) a

_AB_
Initials

statement of legal representation; (vi) a W-9 tax form; (vii) proof of Seller's age of majority and other valid government-issued personal identification; (viii) Seller's most recent federal and state income tax returns; (ix) and such other documents and information as Buyer may reasonably request depending on the personal situation of the Seller.

1.6    Disclosure Statement.    Seller acknowledges receipt of a disclosure statement ("Disclosure Statement") setting out various information regarding this transaction.

1.7    Irrevocable Power of Attorney.

    (a)    With respect only to the Assigned Payments, Seller constitutes and irrevocably appoints Buyer or Buyer's successor or assign the true and lawful attorney for Seller and for Buyer's use and benefit to accept, sign, endorse, negotiate and/or transfer without restriction, in Seller's name and on Seller's behalf, all checks, drafts, promissory notes, or other instruments, payable to Seller's order, or which may require Seller's endorsement, and received pursuant to the Assigned Payments.

    (b)    This power of attorney shall be irrevocable until such time as Buyer has received all Assigned Payments to which it is entitled pursuant to the Agreement and shall not be affected by the death or disability of the principal.

    (c)    With respect only to any promissory note given to Buyer by Seller in connection with this transaction, Seller grants Buyer the right to contact any financial institution in which Seller maintains any funds (a "Bank Account") to enforce the applicable provisions of the Agreement, such enforcement to be construed as a set-off against any and all obligations owed by seller to buyer under any promissory note given to Buyer by Seller. Seller hereby authorizes Buyer to record all appropriate UCC financing statements or other lien document on Seller's behalf against any such Bank Account.

1.8    Designation of Beneficiary.    Seller designates Buyer as Seller's beneficiary to the Assigned Payments. Seller agrees to execute such additional beneficiary designation form as may be required by the owner of the Annuity and/or the issuer of the Annuity to carry out the intent of this Section 1.8.

1.9    Grant of Security Interest.    Seller hereby grants Buyer a first-priority, perfected and continuing security interest in all of Seller's right, title and interest in, to and under the Assigned Payments and the Related Rights (collectively, the "Collateral"). The term "Related Rights" as used in this Agreement means: (i) all payments in respect of the Assigned Payments; (ii) any underlying settlement and assignment documents or other ancillary documentation related to the Assigned Payments; (iii) all liens and property purporting to secure payment of the Assigned Payments; (iv) all rights of Seller under any insurance policy with respect to the Assigned Payments (and all proceeds and premium refunds thereof); (v) all guaranties, indemnities, warranties, financing statements and other agreements or arrangements of whatever character from time to time supporting or securing payment of the Assigned Payments; and (vi) all proceeds of and rights to enforcement with respect to any of the forgoing. All of the Collateral shall secure payment and performance of all of Seller's obligations at any time owing to Buyer,

_ARO_
Initials

3 of 11

fixed or contingent, arising under this Agreement or by operation of law or otherwise. Upon the request of the Buyer, Seller shall furnish to Buyer such documents, financing statements and endorsements as Buyer may require to perfect its security interest in the Collateral.

1.10   <u>Authorization to File Financing Statements.</u> Seller hereby authorizes Buyer, without notice to or further assent by Seller, to file such UCC financing statements and/or amendments thereto with respect to the Collateral as Buyer deems necessary in order to perfect Buyer's security interest therein.

## SECTION TWO

## CONDITIONS OF CLOSING, INSPECTION AND WARRANTIES

2.1   <u>Conditions Precedent.</u> The following conditions precedent have been inserted for the benefit of Buyer and may be waived in whole or in part by Buyer in writing at any time at Buyer's sole discretion. It shall be a condition precedent to Buyer's obligation to complete the within transaction that at the time of closing on the Closing Date:

(a)   The Annuity and Assigned Payments shall be free and clear of all claims, Adverse Claims (as defined in Section 2.2 hereof), liens, mortgages, and encumbrances of any kind or character;

(b)   All necessary final and non-appealable court orders issued by courts of competent jurisdiction shall have been obtained by Buyer at Buyer's cost and expense with the cooperation of Seller in a form acceptable to Buyer approving the nature and particulars of the within transaction and directing that the Annuity Issuer recognize the sale and assignment of the Assigned Payments to Buyer or Buyer's successors and assigns as directed by Buyer without reduction or set off and receipt by Buyer of said court order(s), certified to be a true and complete copy by an officer or clerk of the court or filed in the court issuing such order (hereinafter referred to as "Court Order");

(c)   Seller shall have caused to be terminated any UCC financing statement that purports to record a security interest in the Assigned Payments in favor of any secured party other than Buyer;

(d)   Seller shall have provided all documents and information requested by Buyer contemplated in Section 1.5 hereof;

(e)   Buyer shall have received a written acknowledgment from the Annuity issuer in a form satisfactory to Buyer, acting reasonably, confirming that Seller is entitled to the Assigned Payments in the amount and manner described in the Terms Rider and acknowledging the Annuity Issuer's unqualified agreement to make all of the Assigned Payments to Buyer or Buyer's named successors and assigns in

_/s/ ARO_
Initials

accordance with the Agreement and the Terms Rider and as directed precisely in accordance with the court order(s);

(f) Buyer shall have received the final results of its Inspections, including but not limited to credit and other searches;

(g) Seller has performed all of his obligations under the Agreement.

2.2 <u>Inspection.</u> Buyer shall have the right to conduct one or more inspections ("Inspections") to enable it to determine whether there was filed any liens on, judgments against, or any adverse claim against the Seller and the Annuity (collectively referred to as "Adverse Claims"). Buyer, in its sole discretion, shall be entitled to discharge any Adverse Claims prior to or at the time of closing on the Closing Date by paying such amount or amounts necessary to so satisfy such Adverse Claims. In such case, the Purchase Price shall be automatically reduced by the amount of any such payments. If an undisclosed Adverse Claim affecting the Assigned Payments arises or is discovered after the Purchase Price is paid to Seller, Seller does indemnify Buyer and hold Buyer harmless from any and all resulting losses, shortfalls, or other encumbrances.

2.3 <u>Warranties of Seller.</u> Seller represents and warrants that:

(a) The Agreement, when executed and delivered by Seller, will constitute a legal, valid and binding obligation of Seller, enforceable in accordance with its terms;

(b) Seller is the holder of the entire right, title and interest in and to the Assigned Payments and has full power and authority to enter into and perform all of Seller's obligations under the Agreement, without obtaining the consent of any third party to do so. In that regard, Seller has and will at the time of closing on the Closing Date have full power and lawful authority to transfer title to the Assigned Payments to Buyer or to cause title to the Assigned Payments to be transferred to Buyer;

(c) Seller is entitled to the Assigned Payments, free and clear of any right, interest, lien, charge, encumbrance, or other claim of any other person or entity. There are no suits or proceedings pending or threatened against or affecting the Seller or the Assigned Payments which are likely to have a material adverse effect on Seller's ability to perform its obligations hereunder;

(d) The Annuity (including the Assigned Payments) has not been obtained or created in any fashion which would violate any state, federal or local law, and there are no legal or equitable defenses to the payment of said Annuity to Seller;

(e) Seller has paid all federal, state and local taxes owing through and including the date of execution of the Agreement, or has made or will make adequate provisions thereof;

(f)     Seller is not now in arrears or in default to any present or former spouse for support, maintenance or similar obligations nor is Seller indebted to any child for any child support or similar payment;

(g)     The Assigned Payments, are not subject to any lien by any governmental agency to which benefits such as student loans, food stamp benefits or low income energy assistance benefits are owed;

(h)     Seller has never been known by any name(s) other than those set forth herein;

(i)     Seller's tax identification number is as set out in the Terms Rider;

(j)     The description of the Assigned Payments set forth in the Terms Rider is true and correct;

(k)     Seller has been independently advised and represented by counsel of choice throughout the negotiation of the Agreement or has knowingly waived such advice. Seller has relied solely on the advice of Seller's counsel and other advisors with respect to the legal, tax and financial implications of this transaction and has not relied on Buyer's advice or the advice of Buyer's advisors and/or counsel;

(l)     Seller wishes to obtain "upfront" cash rather than wait for a series of smaller scheduled payments in the future. Seller has considered other means of raising cash but after weighing options has determined that selling the Assigned Payments to Buyer would be in the best interest of the Seller;

(m)     Seller has not previously assigned, pledged or otherwise encumbered any portion of the Assigned Payments;

(n)     Seller has never voluntarily filed for bankruptcy or been subject to an involuntary bankruptcy proceeding or if so has had such bankruptcy proceedings discharged or dismissed;

(o)     Seller has not entered into this transaction for the purpose of evading creditors;

(p)     Seller shall immediately advise Buyer in writing in the event Seller changes his address of residency;

(q)     Seller is an adult of sound mind, not acting under duress or the influence of alcohol or other drugs; and

(r)     The facts set forth by Seller in the Agreement and all Schedules attached hereto are true and complete and do not omit to disclose anything as a result of which those statements are incomplete, false or misleading.


Initials

2.4    Indemnification.    Seller agrees to hold harmless, defend and indemnify Buyer against all claims, losses, damages or expenses, including attorney fees, which Buyer might incur as a result of any breach or failure of any representation or warranty contained in Section 2.3 hereof or as a result of any breach of any term or provision of the Agreement.

## SECTION THREE

## DEFAULT

3.1    Default by Buyer.    In the event that Buyer shall fail to perform or observe any covenant or agreement to be performed or observed by it under the Agreement in a timely manner, Seller may at its option, and in addition to any other remedies available to it in law (including the UCC) or equity, declare Buyer to be in default under the Agreement by written notice to such effect given to Buyer and, at any time thereafter, Seller may declare the Agreement to be at an end.

3.2    Default by Seller.    In the event that Seller shall fail to perform, observe, or honor any covenant or agreement in a timely manner or be in breach of any representation or warranty hereunder, Buyer may at its option, and in addition to any other remedies available to it in law (including the UCC) or equity, declare Seller to be in default under the Agreement by written notice to such effect given to Seller and, at any time thereafter, Buyer may declare the Agreement to be at an end.

3.3    Statutory Exception.    Notwithstanding anything else contained in this Section 3, in the event that the transfer of the Assigned Payment fails to satisfy the conditions set forth in Chapter 81 of Title 23 of the Alabama Statutes and Codes, or any amendments thereto, the Seller shall not incur any penalty or other liability to Buyer.

3.4    Remedies.    Buyer may, in addition to any other remedies provided herein or at law, bring action at law or equity to exercise any one or more of the following remedies:  (i) enforce performance of the defaulted provision, (ii) recover damages for breach thereof, along with its attorney fees and disbursements and other expenses of enforcing its rights hereunder to the extent disclosed to Seller in the Disclosure Statement.

## SECTION FOUR

## MISCELLANEOUS

4.1    Entire Agreement.    The Agreement (together with the schedules attached hereto) represents the entire agreement between the parties and supersedes and cancels any prior negotiations, oral or written agreements, letter or intent or understanding related to the subject matter hereof.

4.2    Counterparts. The Agreement may be executed in several counterparts, and all so executed shall constitute on agreement, binding on both of the parties hereto, even though both parties are not signatories to the original or the same counterpart.  Any counterpart of the

_/s/ ARO_
Initials

Agreement that has attached to it separate signature pages, which altogether contain the signatures of both of the parties hereto, shall for all purposes be deemed a fully executed instrument. Each party to the Agreement agrees that (i) it/he will be bound by its own telecopied signature, (ii) it/he accepts the telecopied signature of the other parties to the Agreement and (iii) it/he will promptly deliver an original signature page to the other party.

4.3   Amendments. No provision of the Agreement may be amended, modified or waived except by written agreement duly executed by each of the parties hereto.

4.4   No Rule of Construction.   The parties acknowledge that the Agreement was initially prepared by Buyer but Seller and Buyer have read and fully negotiated all of the language used herein. The parties acknowledge and agree that because Seller and Buyer participated in negotiating and drafting the Agreement, no rule of construction shall apply to the Agreement which construes any language, whether ambiguous, unclear, or otherwise, in favor of or against either Seller or Buyer.

4.5   Severability.   Wherever possible, each provision of the Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any such provision shall be prohibited by or be invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Agreement.

4.6   Waiver.   The waiver or modification by a party of performance or breach of any provision of the Agreement shall not operate or be construed as a waiver of any subsequent or other performance or breach thereof.

4.7   Survival of Obligations.   The representations, warranties, agreements, acknowledgments, waivers and disclaimers made or contained in the Agreement shall not merge in but survive the Closing Date and the consummation of the transaction contemplated by the Agreement, and shall remain in full force and effect until the expiration of any applicable statute of limitations.

4.8   Governing Law.   The Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Alabama and U.S. Federal law to the extent applicable. In the event of a dispute, the parties agree to attorn to the courts in the State of the Seller's domicile. The domicile state of the Seller is the proper venue to bring any cause of action arising out of the Agreement.

4.9   Headings.   Section headings herein are used for convenience only and shall not otherwise affect the provision of the Agreement nor the interpretation hereof.

4.10   Assignment.   Buyer may, on written notice to Seller at any time prior to the Closing Date or thereafter assign the Agreement to Buyer's successors or assigns provided that Buyer shall remain liable to Seller for all of Buyer's obligations hereunder. Seller shall not assign any of its rights or obligations under the Agreement.

_ARD_
Initials

8 of 11

4.11  Expenses.    Except as otherwise expressly stated in the Agreement, each party shall be responsible for paying its own fees and expenses (including attorney's fees) incurred in the negotiation of the Agreement and the documentation contemplated hereby and the closing of the within transaction.

4.12  Legal Fees.   In the event that a dispute arises between the parties that results in litigation including any appeals, the prevailing party shall be entitled to be fully reimbursed by the unsuccessful party for its/his legal costs and other expenses including attorney's fees on a solicitor and client scale in addition to any award granted.

4.13  Waiver of Jury Trial.  Both parties to the Agreement hereby waive the right to trial by jury in any action or proceeding instituted with respect to the Agreement.

4.14  Notices.    All notices, consents, requests, instructions, approvals and other communications (hereinafter collectively called "Communications") provided for in the Agreement or given or made in connection with the transaction hereby contemplated shall be given, made or served in writing and shall be delivered by hand (which shall include courier delivery) or by facsimile transmission as follows:

(a) if to Seller, to the Seller's Notice Address as set out in the Terms Rider.

(b) if to Buyer:

c/o Woodbridge Structured Funding, LLC
   12031 Ventura Blvd., Suite 3
   Studio City, California 91604
   Attention: Mr. Robert Shapiro
   Fax No: 866-452-4499

Or such other address or telecopier number as either party may from time to time notify the other in accordance with this Section 4.14. All Communications made or given by delivery in accordance with the foregoing shall be conclusively deemed to have been given at the time of actual delivery thereof or, if made or given by facsimile transmission in accordance with the foregoing, shall be conclusively deemed to have been given at the time of transmittal.

4.15  Right of First Refusal.    In consideration for the time and expense incurred by Buyer in preparing these and related documents and conducting investigations relating to the Seller and Annuity and subject to Seller's obligation to convey to Buyer the Assigned Payments for the Purchase Price specified herein Seller agrees that for 60 months following the date hereof Seller shall not sell, assign, borrow against, pledge, or otherwise encumber any one or more of the Annuity payments without first (i) obtaining a written offer or proposal containing all material terms ("Offer"); (ii) giving Buyer a copy of the written Offer and if, within thirty (30) days of receiving a copy of the Offer, Buyer informs Seller that it elects to match the terms of the Offer, then Seller shall be obligated to execute all documents necessary to consummate such transaction with Buyer on those terms. Seller grants Buyer a security interest in all of Seller's Annuity payments to the extent of Buyer's right of first refusal contained herein. The foregoing

Initials

9 of 11

right of first refusal shall survive the exercise of any right of cancellation or rescission that Seller or Buyer may have under the Agreement or applicable law.

4.16  Further Acts.  Seller shall do, make, execute, and deliver any and all such additional and further acts, assignments, assurances, and instruments as Buyer or Buyer's assigns may reasonably request for the purpose of completely vesting in Buyer or its Assigns, as the case may be, the rights assigned hereunder.

4.17  UCC Definition.  As used in this Agreement, "UCC" shall mean the Uniform Commercial Code as the same may, from time to time, be in effect in the state where Seller resides (the "State"); provided, however, in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of Buyer's security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State, the term "UCC" shall mean the Uniform Commercial code in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

IN WITNESS WHEREOF the parties have executed the Agreement as of the date first above written.

WOODBRIDGE STRUCTURED FUNDING, LLC

By: _____
Name:  James A. Klohn
Title:  Vice President

SELLER

_____
ANNAKA ROCHELLE DULANEY

Initials

10 of 11

## SCHEDULE "A"

## TERMS RIDER TO STRUCTURED SETTLEMENT ANNUITY
## SALE AND ASSIGNMENT AGREEMENT

Name of Seller:

Seller's current address / Notice Address:

Seller's immediate prior address:

Seller's social security number:

Seller's tax identification number (if different from above):

Seller's spouse's name:

Seller's dependents' names and perspective ages:

Contingent Payee/Beneficiary:

Name of Annuity Holder:

Annuity Policy Number:

Date of Annuity Policy:

Payments Being Assigned:

Purchase Price:

SELLER:

_____         Witness: _____
ANNAKA ROCHELLE DULANEY

WOODBRIDGE STRUCTURED FUNDING, LLC

Per: _____
Name: James A. Klohn
Title: Vice President

_____
Initials

11 of 11

*Please complete where indicated and sign*

## TERMS RIDER TO STRUCTURED SETTLEMENT ANNUITY SALE AND ASSIGNMENT AGREEMENT

Name of Seller:                                    Annaka Rochelle Dulaney

Seller's current address / Notice Address:         3845 Pattons Chapel Rd.
                                                   Lincoln, AL 35092

Seller's social security number:                   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

Seller's spouse's name:                            _____

Seller's dependents' names and respective ages: _____

Name of Annuity Issuer:                            _____

Name of Annuity Owner:                             _____

Annuity Policy Number:                             _____

Date of Annuity Policy:                            _____

Payments Being Assigned:

One (1) lump sum payment of Twenty Five Thousand and 00/100 Dollars ($25,000.00) due and payable on July 11, 2011;

and

One (1) lump sum payment of Twenty Five Thousand and 00/100 Dollars ($25,000.00) due and payable on July 11, 2013;

and

One (1) lump sum payment of Fifty Thousand and 00/100 Dollars ($50,000.00) due and payable on July 11, 2015;

and

One (1) lump sum payment of Fifty Thousand and 00/100 Dollars ($50,000.00) due and payable on July 11, 2017;

and

One (1) lump sum payment of One Hundred Seventy Two Thousand and 00/100 Dollars ($172,000.00) due and payable on July 11, 2020.

*Please complete where indicated and sign*

Purchase Price:           $112,054.02

SELLER:

*[signature]*
ANNAKA ROCHELLE DULANEY

WOODBRIDGE STRUCTURED FUNDING, LLC

Per: *[signature]*
Name: James A. Klohn
Title: Vice President